IN THE UNITED STATES DISTRICT COURT OF
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DONNELL FLOURNOY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: 1:10-CV-104-MHT |
| | ) | [WO] |
| SKIP DUFFIE, CCO STAFF, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff filed this *pro se* 42 U.S.C. § 1983 action while incarcerated at the Houston County Jail located in Dothan, Alabama.[1]  This action is pending against Gary Knight, Director of the Houston County Work Release Program ["HCWRP"], Skip Duffie, a probation officer for HCWRP, and Veronica Alvarado, a former employee of HCWRP.[2]  Plaintiff alleges that his constitutional rights were violated when he was removed from HCWRP because he suffers from disabilities.  Plaintiff seeks injunctive relief and monetary damages and requests trial by jury.[3]

Defendants filed an answer, special report, supplemental special report, and relevant supporting evidentiary materials addressing Plaintiff's claims for relief.  The court then

---

[1] Since filing this action, Plaintiff has been released from prison.

[2] These designations were correct at the time the action was filed.

[3] Plaintiff's claims against Houston County Commissioner Mark Culver and Lieutenants Napa and Jones with D.S.I. Security were previously dismissed in accordance with the prior proceedings and orders of the court.  *See* Doc. Nos. 4, 12.

informed Plaintiff that Defendants' special report  may, at any time, be treated as a motion for summary judgment, and the court explained to Plaintiff the proper manner in which to respond to a motion for summary judgment.  Plaintiff  filed a response to the  special report filed by Defendants.  Thus, this case is now pending on Defendants' motion for summary judgment.  Upon consideration of the motion, the evidentiary materials filed in support thereof, and the response filed by Plaintiff, the court concludes that Defendants' motion for summary judgment is due to be granted.

## I.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[4]  The party moving

---

[4] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions."  Fed. R. Civ. P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word – genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id*.  "'Shall' is also restored to express the direction to grant summary judgment."  *Id*.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

Case 1:10-cv-00104-MHT-WC   Document 46   Filed 09/07/12   Page 3 of 14

for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

Defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact with respect to the claims properly before this court. Thus, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

In civil actions filed by inmates, federal courts

must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).  Consequently, to survive Defendants' properly supported motions for summary judgment, Plaintiff is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claim(s) for relief.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Fed. R. Civ. P. 56(e).  "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted."  *Id*. at 249-50.

A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment.  *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984).  Consequently, when a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex Corp.*, 477 U.S. at 322; *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607 (11th Cir. 1987).  Where all the materials before the court indicate that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex Corp.*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987).

4

Although factual inferences must be viewed in a light most favorable to the non-moving party, and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing a genuine dispute of material fact. *Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, Plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Plaintiff fails to demonstrate a requisite genuine dispute of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

## II. BACKGROUND

In December 2009 Judge Little of the Circuit Court for Houston County, Alabama, sentenced Plaintiff to a fifteen year sentence with 1 year split to be served at HCWRP. Within three weeks of Plaintiff's arrival at HCWRP, Defendant Alvarado deemed Plaintiff unemployable due to medical conditions and issued a delinquency report against him. Following issuance of the delinquency report, Plaintiff was transferred to the Houston County Jail. On January 12, 2010, Plaintiff's probation was revoked. He complains that Defendants' determination that he was medically unfit to perform work at HCWRP subjected him to termination in violation of his constitutional rights to due process and equal protection.[5] (Doc. No. 1).

---

[5] While Plaintiff claims in his complaint that Defendants' action violated his rights under the "Disabilities Act," the "Social Security Act," and the "Handicapped Act," in his opposition to Defendants'

Defendants' evidence reflects that Judge Little sentenced Plaintiff on December 3, 2009 to a fifteen year sentence with a one year split to be served at HCWRP.  As an alternative form of sentencing, inmates from the city or county jails located in Houston County may be released for the purpose of employment at HCWRP or for other rehabilitative purposes at the discretion of judicial officers with the Houston County state court system. Following Plaintiff's assignment to HCWRP, he was interviewed by Defendant Duffie on December 9, 2009.  Defendant Duffie informed Plaintiff of the conditions and requirements of HCWRP made the subject of Judge Little's December 3, 2009 sentencing order.  At the time of the interview, Plaintiff filled out a supplemental sheet wherein he indicated that he wore a backbrace and was officially disabled but that he was able to work.  (Doc. No. 18, Exs. 1, A; Doc. No. 24, Ex. 2.)

Defendant Alvarado, the job location specialist at HCWRP, worked with Plaintiff for three weeks in an effort to find him a suitable job.  She subsequently informed Defendant Duffie that Plaintiff was unemployable due to disabilities which made it difficult for him to engage in full-time employment.  She further informed Defendant Duffie that Plaintiff indicated he had difficulty working.  (Doc. No. 18, Ex. 1, Doc. No. 24, Exs. 2, A.)

On December 30, 2009 Defendant Duffie, at Defendant Knight's direction, instituted

---

dispositive motion he abandons any such alleged causes of action.  Specifically, Plaintiff asserts that he has "raised clear constitutional grounds in his complaint that show Defendants' failure to give Plaintiff an equal protection and due process right[] to participate in the Houston County Work Release Program once assigned due to his handicapes [sic] and disabilities."  (Doc. No. 20 at 1.)  The court's April 14, 2010 order, which explained to Plaintiff how to respond to a motion for summary judgment, clearly states that if Plaintiff "fails to respond to the written report with respect to each of the claims raised in his complaint, the court will treat this failure as an abandonment of these claims and shall proceed as justice requires."  (Doc. No. 19 at 1.)

a disciplinary report on Plaintiff based on his failure to comply with the conditions, rules, and regulations of HCWRP. Plaintiff received a copy of the delinquency report which recommended that he be returned to the Houston County Jail pending a Community Correctional Revocation hearing scheduled for January 12, 2010.  Following the January 12  hearing where Plaintiff was allowed to testify and given the opportunity to cross examine witnesses, Judge Lori Ingram ordered Plaintiff removed from HCWRP for his failure to obtain or maintain employment, a violation of the terms and conditions of his probation. Finding that no measure short of confinement would adequately protect the community from further criminal activity by the offender or avoid depreciating the seriousness of the violation, Judge Ingram  directed Plaintiff be recommitted to the Alabama Department of Corrections.  (Doc. No. 18, Exs. 1, B, C, D; Doc. No. 24, Ex. 2)

## III.  DISCUSSION

*A.  The Request for Injunctive Relief*

As noted, Plaintiff is no longer incarcerated.  The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief.  *See  Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury

or real and immediate threat of repeated injury).  Because the records before the court clearly reflect that Plaintiff is no longer incarcerated, his request for injunctive relief has been rendered moot.

*B. Due Process*

The loss of liberty occasioned by parole revocation requires that parolees be accorded due process. *Morrissey v. Brewer,* 408 U.S. 471 (1972).  The same due process requirements apply in probation revocation hearings.  *Gagnon v. Scarpelli,* 411 U.S. 778, 782 (1973). However, "the full panoply of rights due a defendant in [a criminal prosecution] does not apply to parole [or probation] revocations." *Morrissey v. Brewer,* 408 U.S. 471, 480 (1972). In order to revoke parole or probation, there must be "(1) a formal finding that a probationer or  parolee has committed a violation and (2) a determination that the violation was serious enough to warrant reimposing the probationer's or parolee's original sentence." *United States v. Ramirez,* 347 F.3d 792, 800 (9th Cir. 2003) (citations omitted).  Due process requires that "the final revocation of probation must be preceded by a hearing, although the factfinding body need not be composed of judges or lawyers." *Black v. Romano,* 471 U.S. 606, 611-12 (1985) (citations omitted).  As part of this hearing, the probationer is "entitled to written notice of the claimed violations of his probation; disclosure of the evidence against him; an opportunity to be heard in person and to present witnesses and documentary evidence; a neutral hearing body; [ ] a written statement by the factfinder as to the evidence

8

relied on and the reasons for revoking probation. . . ; [and an opportunity] to cross-examine adverse witnesses, unless the hearing body specifically finds good cause for not allowing confrontation." *Id.* at 612.

Here, Plaintiff has not shown that these due process requirements were not satisfied. The procedural obligations required by federal law were fulfilled. Plaintiff received written notice regarding the specific nature of his violations and the supporting evidence, and he had a hearing that comported with the constitutional requirements of due process. Accordingly, Defendants are due to be granted summary judgment on Plaintiff's due process claim.

To the extent Plaintiff's complaint may be understood to allege a claim that his transfer to a more secure correctional facility amounted to a due process violation, he is likewise entitled to no relief as such action, while more burdensome on an inmate, is "within the normal limits or range of custody which the conviction has authorized the State to impose." *Meachum v. Fano*, 427 U.S. 215, 225 (1976); *Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983) (a prisoner has no constitutional right to be confined in a particular institution); *Sandin v. Conner*, 515 U.S. 472, 478 (1995). In general, "as long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed on him . . . the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460-61 (1989) (quoting *Montanye v. Haymes*, 427 U.S. 236, 242 (1976)).

9

*C.  Equal Protection*

Plaintiff claims that Defendants denied him equal protection when, following his admission to HCWRP, he was subsequently removed because of his disability(s). The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The equal protection clause 'is essentially a direction that all persons similarly situated should be treated alike.'" *Spence v. Zimmerman,* 873 F.2d 256, 261 (11th Cir. 1989), quoting *City of Cleburne, Texas v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439 (1985). A disparate treatment claim requires establishing that similarly situated inmates were not similarly treated and that prison officials engaged in invidious discrimination based on race, religion, national origin, poverty, or some other constitutionally protected interest. *See Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) (the Equal Protection Clause "simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike."); *Jones v. Ray*, 279 F.3d 944, 947 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986).

Additionally, to succeed on an equal protection challenge, Plaintiff must demonstrate the existence of discriminatory intent; arbitrary application of prison rules without discriminatory intent is insufficient to demonstrate a violation of the Equal Protection Clause. *Jones v. White*, 992 F.2d 1548, 1573 (11th Cir. 1993); *E & T Realty v. Strickland*, 830 F.2d 1107 (11th Cir. 1987). Thus, in order to state a viable equal protection claim, Plaintiff must

first make a threshold showing that he was similarly situated in the relevant aspects to those who received more favorable or different treatment.  *See, e.g.*, *Oliver v. Scott*, 276 F.3d 736, 746-47 (5th Cir. 2002) (finding  no equal protection violation where security-related policy treated male and female prisoners differently because male prisoners in a certain prison were more numerous and had been convicted of more violent offenses).  "Bare allegations that 'other' applicants, even 'all other' applicants, were treated differently do not state an equal protection claim; a complaint must attempt to show in some fashion that these 'other' applicants were situated similarly to the Plaintiff."  *GJR Inv., Inc. v. Escambia*, 132 F.3d 1359, 1367-68 (11th Cir. 1998); *see also Norvell v. State of Ill.*, 373 U.S. 20, 423 (1963) ("[e]xact equality is no prerequisite of equal protection of the laws within the meaning of the Fourteenth Amendment.").

Plaintiff  must also show that Defendants acted with intent to discriminate against him.

> [O]fficial action will not be held unconstitutional solely because it results in a . . . disproportionate impact. . . .   Proof of . . . discriminatory intent or purpose is required to show a violation of the Equal Protection Clause. Discriminatory purpose . . . implies more than intent as volition or intent as awareness of consequences.  It implies that the decision maker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group.

*Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991).  In a case such as this one, where Plaintiff challenges the actions of custodial officials, exceptionally  clear  proof  of

discrimination is required.  *Fuller v. Georgia Bd. of Pardons and Paroles*, 851 F.2d 1307, 1310 (11th Cir. 1988).  Evidence which merely indicates disparity of treatment is insufficient to show discriminatory intent.  *McKleskey v. Kemp*, 481 U.S. 279 (1987); *Washington v. Davis*, 426 U.S. 229, 242 (1976).  Further, conclusory allegations or assertions of personal belief of disparate treatment or discriminatory intent are insufficient. *GJR Inv., Inc. v. Cnty. of Escambia,* 132 F.3d 1359, 1367-68 (11th  Cir. 1998); *Coon v. Ga. Pac. Corp.,* 829 F.2d 1563, 1569 (11th Cir. 1987).

Neither disability nor age is a suspect classification under the Equal Protection Clause, *see Bd. of Trustess of Univ. Of Ala. v. Garrett,* 531 U.S., 356, 366-67 (2001), and inmates themselves do not constitute a suspect or quasi-suspect class entitling such persons to "strict scrutiny" of disparate government treatment.   Here, what Plaintiff complains of is his disappointment in not being allowed to remain at HCWRP despite his inability and/or unwillingness to meet the conditions required for selection and retention at the work release center.  Plaintiff regards this conduct as actionable unequal treatment.  Nevertheless, Plaintiff does not allege that he was subjected to any tangible unequal treatment by Defendants' conduct such as their decision to terminate his participation in HCWRP being based upon a constitutionally protected interest. As a matter of law, therefore, the allegations supporting this claim, without more, do not rise to the level of a constitutional violation.   Summary judgment is, therefore, due to be granted in favor of Defendants on Plaintiff's equal protection claim.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  Defendants' motion for summary judgment, as supplemented (*Doc. Nos. 18, 24*), be GRANTED;

2.  Judgment be GRANTED in favor of Defendants;

3.  This case be DISMISSED with prejudice; and

4.  The costs of this proceeding be taxed against Plaintiff for which execution may issue.

It is further

ORDERED that on or before **September 21, 2012**, the parties may file objections to the Recommendation.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a *de novo* determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Sec., Inc*., 667 F.2d 33

(11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 7th day of September, 2012.


/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE